Ransom, S.
—This is a motion for a reargument of the questions arising on the settlement of the decree.
I held that the executor, who is likewise the life tenant, should not receive or retain the custody of the residuary estate, either as executor or life tenant, without giving bonds.
The rule of law prohibiting a life tenant from receiving the residuary estate without giving bonds is based upon the-, ground that in no other way' can adequate protection be afforded to the remainderman. It appears to be a disqualification attaching to the person.
The fact that the executor and life tenant is likewise the feneral guardian of his child, the remainderman, is an aditional reason against his retention of the funds without security. By holding the contrary, as so ably argued in the executor’s behalf; the last safeguard for the minor is destroyed, and the only channel through which his interests might be protected is practically closed.
The whole theory of the law is against any person, however high his standing may be, his probity unquestioned, combining in himself so many and such6conflicting interests; and I doubt if the supreme court would appoint him guardian if the facts, as they are now presented, were before it. I am of opinion that upon a mere suggestion of the state of facts now existing it would revoke the appointment. The rule that a man shall not unite in himself, except under extraordinary circumstances, the positions of trustee and cestui que trust, are based upon grounds of public policy. “Any agreement which, in itself, is, or which contemplates or involves, or requires, or is calculated, to induce a dereliction or laxity in the performance- of' the-public or private duty of men, is void.” Greenhood on Public Policy, 306.
The reason for this principle in the law of contracts applies with greater force in a case of this character. The assumption of such conflicting duties and responsibilities is liable to tempt officials from the honest discharge of their duties, and is, therefore, in contravention of public policy. If tolerated they would sap the foundation on which official honesty rests, and legalize temptations which would lead; from duty many an official who, without such inducement,, might perform his duty.
The Civil Code of California, § 2232, provides that “no trustee, so long as he remains in trust, may undertake another trust adverse in its nature to the interest of his beneficiary in the subject of the trust, without the consent of the latter.” And this section is but a further application of the principle, stated in another form in section 2230-of the same Code, that the trustee must not place himself *358 in a position inconsistent with his. duty to his beneficiary. It is likewise provided by section 2232 of the said Code that “if a trustee acquires any interest, or becomes charged "with any duty, adverse to the interest of his beneficiary in the subject of the trust, he must immediately inform the latter thereof, and may be at once removed.”
Counsel for the executor contends strenuously that the executor is not a trustee.
Upon the argument of the exceptions to the report of the referee, where the special guardian urged that the life tenant should be required to give security before taking possession of the residuary estate, the counsel for the executor insisted that testatrix intended that the life tenant should retain actual custody of the estate without giving bonds.
In this connection attention is called to the case of Smith v. Van Ostrand, 64 N. Y., 282, cited in the brief of executor’s counsel, where it was held that the testator may confide a fund to a legatee for life, trusting to such legatee to preserve the fund for the benefit of those entitled to it in remainder, and in such case the legatee for life becomes trustee of the principal fund during the continuance of the life estate. This would constitute him a testamentary trustee.
It may add some force to the suggestions already made, that the executor is in effect and for all practical purposes, under the circumstances existing in the case at bar, a trustee, that by the English Trustee Act of 1850, the words “ trust” and “trustee” are defined as extending to and including “ the duties incident to the office of personal representative of a deceased person.”
“Executors * * * hold the property of their testators in trust for the payment of debts and legacies, and for the application of the surplus according to the will of the testators, and courts of equity proceed in cases of this kind as in the execution of trusts.” Tiffany and Bullard on Trusts, p. 483. The executor always takes the legal title to the personal property of the testator as trustee. 10 Paige, 199.
All the cases cited by the executor’s counsel, recognize that security should be taken for the return_of the principal at the termination of the particular estate: if it is permitted to go into the hands of the legatee, they all look to the protection of the interest of the remainderman as against the person who has possession of the residuary estate^ Row, the fact that this person happens to hold likewise the position of executor, does not obviate the necessity for this requirement; he is none the less likely to dissipate or misappropriate the funds on that account. It is against just such misappropriation, dishonesty or improper investment of the funds that the rule is intended to guard. A person who holds property simply as trustee, or as executor, will *359 seek to guard chiefly the corpus of the estate, and could not be tempted to injudicious investments in order to increase the revenue, whereas the person entitled to the income might, with the most honest intentions, run greater risks in order that the income from' the principal might be enlarged. This is the evil which the law seeks to remedy, and the disastrous result which it seeks to prevent by requiring security.
Executor’s counsel quotes from the decision in Montfort v. Montfort (24 Hun, 120): “That a duty devolved upon the executors to protect and preserve the fund for those entitled in remainder. ” It is not anomalous to require a man to protect some one against himself; to preserve the interests of another against his own misconduct or incapacity. Suppose the fund should remain, as claimed by the executor, and occasion should arise for complaint as to his management of the fund, would Hr. Shipman, as life tenant, complain that he himself, as executor, was wasting the funds? Or would he, as guardian of his child, complain, against his own acts as executor? As a matter of fact there would be nobody who could complain. He would represent, in himself, every interest entitled to institute proceedings for waste, misappropriation or other misconduct.
In the case of Marlett v. Marlett (14 Hun, 313) the precise point at issue here was not determined. There the court expressly refrained from construing the will, and it would have been an important factor in determining. if a bond, should be given, vyhether the executrix, who was also life tenant, had the power to dispose of the property during-her lifetime, for in the event of the exercise of that power there would be no remainder to protect.
In Bundy v. Bundy (38 N. Y., 410) the judgment appealed from provided that the executors, upon giving proper security, should continue in charge of the fund; and that provision was approved by the appellate court. They say; “ In this there was no error; the will not having designated a trustee for this purpose, it was competent for the court to-appoint a trustee. This may be regarded as such appointment.” While the executor and executrix were not constituted trustees by the will, the court held that they might, act as such, but upon giving bond. It also held that the-executrix could not act as trustee for that portion of the-estate as to which she was cestui que trust. See also Postley v. Cheyne (4 Dem., 492).
But one case has been cited by counsel for the executors which at all embarrasses adherence to the views heretofore-expressed by me—the case of Moke v. Norrie (14 Hun, 128). In that case it was contended that the word ‘execu *360 tors ” did not include an executrix for the purpose of constituting her a trustee under the will, the “executors” being constituted trustees.
One of the arguments urged to sustain this interpretation was that if she were not excluded she would be constituted a trustee for herself. The court held(p. 132): “If this fact were fatal to a trust, its effect, we think, would be limited in this case to the portion which is for her own benefit. But the law is now settled that a cesttd que trust is not absolutely excluded from occupying the relation of trustee for his own benefit; and especially is this so where he is but one of several trustees.”
It will be noticed that the general term (Judge Davis writing the opinion) entirely ignored the leading case decided by the court of appeals, Bundy v. Bundy.
The case of Hovey v. McLean (1 Dem., 396), .is not an authority here, for, in the language of the surrogate, there was a grave question of construction of the will, whether the executrix did not have an absolute power of disposition of the personal, estate.
In Rogers v. Rogers (18 Hun, 409), referred to in the brief of executorys counsel, it is claimed the general term 11 sustained the right of the beneficiary in the trust, to execute the same as trustee thereof.” That case, so far as the opinion shows, held that, because the trustee was likewise cestui que trust, would not render the trust void. In effect, the opinion recognizes the impropriety of the same person acting as trustee and cestui que trust, for the court says that if any of the other trustees named in the will had qualified, it would have been proper to direct that the trustees, other than the widow, should apply to her use, what was her right under the will.
This case was taken to the court of appeals, and the decision will be found in 19 N. Y. State Rep., 94. There the court squarely decided that as to the portion of the trust estate of which the widow was beneficiary, she was incompetent to act as trustee. The court also held that although the trustees, other than the beneficiary, might die or decline to act, the court has power to supply their places, or if need be, take upon itself the execution of the trust, so far as it ought not to be executed by the trustee, who is also the beneficiary.
See also opinion of general term (Davis, P. J., writing), in De Rivas v. De Herques, reported without opinion in 24 Hun, 341, and afterward affirmed by the court of appeals, on the general term opinion, and reported only as a memorandum in 85 N. Y., 645.
The law seems to be that, except where there is a power given to the life-ten ant to dispose of the funds, either abso *361 lately or for certain purposes, the general rule that the same person cannot be trustee and cestui que trust applies. Rogers v. Rogers (supra); Marlet v. Marlet (supra); Hovey v. McLean (supra); Smith v. Van Ostrand (supra.).
The reason for the rule disqualifying executors or other trustees from entering into contracts with their cestui que trust applies with equal force in this case to prevent the petitioner from occupying those conflicting relations. “ This rule is based upon our recognized obligation from placing ourselves in relations which ordinarily excite a conflict between integrity and self-interest. The disability in such cases is a consequence of that relation between the parties, which imposes on the one the duty to protect the interests, of the other, from the faithful discharge of which duty his own personal interests may withdraw him. In this conflict of interests, the law wisely interferes. It is true that a. sense of duty may prevail over motives of self-interest; but it is equally true that the dictates of self-interest, may exercise a predominating influence and supersede those of duty. Experience has taught that it is not well to subject men to so severe a trial.” See Tiffany & Bullard on Trusts, 484.
Motion denied.